**Sebastian SHAUMYAN, et al.**

v.

**Shawn Mark O'NEILL, et al.**

**Civ. No. N–87–463 (AHN).**

United States District Court, D. Connecticut.

May 28, 1992.

Joanne S. Faulkner, New Haven, Conn., for plaintiffs.

Carl Amento, New Haven, Conn., Matthew Karanian, Halloran & Sage, Hartford, Conn., for defendants.

## RULING ON MOTION FOR RECONSIDERATION

NEVAS, District Judge.

This is a civil rights action brought by Sebastian Shaumyan and Maria Shaumyan (collectively referred to as the "Shaumyans") against Sidetex Company, Inc. ("Sidetex") and its attorney, Stephen Rolnick ("Rolnick") (collectively referred to as the "Defendants").[1] The Shaumyans are consumers who were sued in state court by Sidetex, which was represented by Rolnick, for an alleged breach of contract. They now claim that the Defendants violated their constitutional rights under the fourteenth amendment by obtaining an *ex parte* prejudgment attachment on the Shaumyans' real property pursuant to Conn.Gen.Stat. § 52–278e(a)(1) (the "Statute") in connection with that state court

---

1. At its inception, this case involved additional parties, plaintiff Edward Cacace ("Cacace") and defendants New Haven Firefighters Credit Union (the "Credit Union") and Shawn Mark O'Neill ("O'Neill"), the Credit Union's attorney. Pursuant to a stipulation of dismissal between Cacace and defendants O'Neill and the Credit Union, these parties are no longer part of this litigation. (*See* Filing No. 98, Stipulation of Dismissal, (December 31, 1991).)

action. The Shaumyans seek money damages pursuant to 42 U.S.C. § 1983 as well as a declaratory judgment that the Statute, on its face, violates the due process clause and/or the equal protection clause of the fourteenth amendment.

On June 27, 1989, this court issued a detailed ruling on the parties' cross motions for summary judgment upholding the constitutional validity of the Statute as applied to the facts in this case. *See Shaumyan v. O'Neill,* 716 F.Supp. 65 (D.Conn. 1989) (*"Shaumyan I"*). On appeal, the Second Circuit Court of Appeals dismissed the appeal without prejudice and remanded the case for reconsideration in light of two subsequent rulings, *Pinsky v. Duncan,* 898 F.2d 852 (2d Cir.1990) and *Connecticut v. Doehr,* — U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), the United States Supreme Court's affirmance of *Pinsky.* (*See* Filing No. 92, Mandate of the Second Circuit Court of Appeals (October 31, 1991) ("Remand"). In addition, pursuant to the mandate of the Court of Appeals, this court notified the Connecticut Attorney General of the state's right to intervene in the matter pursuant to 28 U.S.C. § 2403(b), an opportunity the state has declined. (*Id.; see also* Filing No. 109, Letter from Attorney General Blumenthal to Judge Nevas of 11/26/91 (copy attached as appendix A).)

In compliance with the Remand, currently pending before the court is a limited reconsideration of its ruling in *Shaumyan I* in light of the Second Circuit's ruling in *Pinsky* and the Supreme Court's affirmance in *Doehr.* After reconsideration, for the reasons stated, the court affirms its earlier ruling in *Shaumyan I,* except that, to the extent it may be interpreted to the contrary, the ruling is modified as upholding the Statute's constitutionality only as applied to the facts of this case.

*Discussion*

As a preliminary matter, the court notes that several of the issues raised by the parties in their arguments concerning reconsideration of *Shaumyan I* are not properly before the court at this time. Following the Remand, the parties filed renewed cross-motions for summary judgment in which they sought to relitigate all of the issues raised and addressed by the court in *Shaumyan I.* (*See* Filings Nos. 93–97, 99–105, 107, Renewed Cross–Motions for Summ.Judg. and related pleadings.) Consequently, the parties raised issues concerning the court's subject matter jurisdiction, mootness, and qualified immunity, all of which were addressed in *Shaumyan I,* in addition to the constitutional validity of the Statute. Because the court interprets the Court of Appeals' mandate as remanding for limited reconsideration of the constitutional challenge to the Statute in light of *Pinsky* and *Doehr,* the renewed motions for summary judgment exceed the scope of the Remand. *See Davis v. Alabama Dept. of Ed.,* Civ.A. No. 82–G–1411–S, 1990 WL 150083 (N.D.Ala., S.D. June 28, 1990) (court will not consider arguments raised in parties' briefs that go beyond the scope of remand by appellate court); *see also Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 n. 2 (11th Cir.1984) ("[o]n remand district court is not free to deviate from appellate court's mandate"). The court, therefore, construes the parties' filings as cross-motions for reconsideration and limits the scope of reconsideration to the sole issue of the Statute's constitutionality in light of *Pinsky* and *Doehr.*[2] *See City of Cleveland, Ohio v. Federal Power*

---

**2.** The Remand states in relevant part:

Subsequent to the district court's decision, we decided *Pinsky v. Duncan,* 898 F.2d 852 (2d Cir.1990). That case concerned the same statutory provisions, but in the context of a personal injury tort rather than a real property claim. We found that the statute was unconstitutional because the procedural safeguards present did not adequately reduce the significant risks of a temporary erroneous deprivation. The Supreme Court affirmed in *Connecticut v. Doehr,* — U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). We remand this case for reconsideration by the district court in light of these two decisions.

Further, ... on remand, the district court is directed to certify to the Attorney General of the State of Connecticut that the constitutionality of § 52–278e(a)(1) is in question and permit the state to intervene, present evidence and argument with respect to the constitutional issues presented.

*Comm'n,* 561 F.2d 344, 346 (D.C.Cir.1977) (federal appellate court's opinion may be consulted by lower court to ascertain the intent of mandate).

To this end, the Shaumyans mount a two pronged, facial challenge, to the Statute's constitutionality. First they contend that the Statute lacks notice and hearing provisions, requisite procedural safeguards, rendering it infirm in light of the holdings in *Pinsky* and *Doehr.* In the alternative, they invite the court to adopt the minority position in *Pinsky* and *Doehr* that the Statute is unconstitutional on its face because it fails to contain a provision for a security bond. After reconsideration of *Shaumyan I* in light of a careful examination of *Pinsky* and *Doehr,* the court finds neither argument sufficient to warrant a change in its earlier position upholding the Statute's constitutionality as applied in this case and, thus, declines to reverse its holding in *Shaumyan I.*

### A. *Adequacy of the Notice and Hearing Provisions*

■ In *Pinsky* and *Doehr,* both the Second Circuit and the Supreme Court found that the Statute's sanctioning of an *ex parte* prejudgment attachment on the real property of a defendant in a state court tort action violated the due process clause of the fourteenth amendment. *Doehr,* 111 S.Ct. at 2116; *Pinsky,* 898 F.2d at 856. Specifically, those courts found that the Statute's lack of adequate notice and hearing provisions failed to satisfy the requirements of due process. The Shaumyans contend that those rulings amount to a *per se* invalidation of the Statute's *ex parte* attachment procedure as applied in all contexts, including this breach of contract dispute and, thus, are dispositive of this matter. The court disagrees.

The scope of *Pinsky* and *Doehr* is not entirely clear. Specifically, do they hold the Statute unconstitutional on its face as applied in all situations or is the Statute constitutionally problematic only as applied to the facts in *Pinsky* and *Doehr,* a case involving complex and disputed factual allegations of an intentional tort committed during a fist fight between the parties?

In the opening paragraph of *Pinsky,* Judge Pratt, writing for the majority, expressly "agree[d]" with plaintiff's claim "that § 52–278e(a)(1) is unconstitutional *on its face." Pinsky,* 898 F.2d at 853 (emphasis added). In his analysis of the issue, however, Judge Pratt, emphasized that "[t]he highly factual nature of the issues involved in the *ex parte* proceeding gives us further reason to doubt the adequacy of [the Statute's] existing procedures." *Id.* at 855. Specifically, Judge Pratt contrasted the complex and highly disputed factual nature of the fist fight in *Pinsky* with the relatively uncomplicated, " 'sharply focused and easily documented' " nature of disputes considered by the Supreme Court in its constitutional evaluation of other prejudgment remedy statutes in *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Pinsky,* 898 F.2d at 856. In contrast to the tort dispute in *Pinsky,* Judge Pratt noted that *Mitchell* stressed the fact that creditor—debtor disputes involved " 'uncomplicated matters that lend themselves to documentary proof' and that '[t]he nature of the issues at stake minimizes the risk that the writ will be wrongfully issued by a judge.' " *Pinsky,* 898 F.2d at 856, quoting *Mitchell,* 416 U.S. at 609–610, 94 S.Ct. at 1901. In distinguishing *Pinsky* from the earlier Supreme Court opinions, moreover, Judge Pratt emphasized:

[u]nlike the procedures upheld in *Mitchell* and *Mathews,* Connecticut's *ex parte* proceeding involves the court in a host of difficult factual questions. To issue an attachment, the judge must determine whether 'there is probable cause to sustain the validity of the plaintiff's claim.' *The statute is not limited to simple debtor-creditor disputes, where the likelihood of recovery often can be ascertained from documentary proof submitted by the creditor.* Instead, the attachment procedure is available in all civil actions, *including those arising from such fact-specific events as fist*

*fights, as illustrated by the facts of the present action.*

*Pinsky*, 898 F.2d at 856 (emphasis added) (citations omitted). It appears, therefore, that the majority's conclusion that the constitutional inadequacy of the Statute's notice and hearing provisions was based, at least in part, on Judge Pratt's concern that the "risk of a wrongful attachment is considerable" in the context of actions involving highly complicated and disputed facts such as the fist fight in *Pinsky*.

Similarly, the Supreme Court's affirmance of *Pinsky* in *Doehr* emphasized the narrow factual context in which the justices considered the Statute's validity. *Doehr* reiterated the general premise that the Court's evaluations of prejudgment remedy statutes "reflect the numerous variations this type of remedy can entail ... [and] 'underscore[s] the truism that [d]ue process unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Doehr*, 111 S.Ct. at 2111–2112, quoting *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902. The fact specific application of the Statute to an intentional tort action predicated on a fist fight, rather than to an action to recover payment for work performed on real property as in *Shaumyan I*, thus, limited the scope of the Court's analysis in *Doehr*.

*Doehr*'s concern with the Statute focused on the risk associated with Connecticut's permitting a court to predicate a prejudgment attachment on a probable cause determination made in an exclusively *ex parte* proceeding. *See Doehr*, 111 S.Ct. at 2113–2114. The Court found that neither the Statute's mandate of a judicial inquiry into the sufficiency of the complaint nor the requirement that a plaintiff file a factual affidavit "adequately reduce[d] the risk of erroneous deprivation." *Id.* at 2114.

The Court reasoned that to permit, *ex parte*, authorization of an attachment "merely because the plaintiff believes the defendant is liable, or because the plaintiff can make out a facially valid complaint," would sanction a deprivation of a defendant's property where the factual allegations underlying that claim were insufficient to convince a jury, disputed by the defendant, or insufficient to state a claim for which relief could be granted. *Id.* *Doehr* concluded that "[t]he potential for unwarranted attachment in these situations is ... too great to satisfy the requirements of due process absent any countervailing consideration." *Id.*

Like *Pinsky*, however, *Doehr*'s concern with the lax probable cause requirement of the Statute is particularly heightened in situations involving complex and disputed factual matters such as the alleged intentional tort. Indeed, *Doehr* appears to go to great lengths to distinguish its analysis from past due process inquiries involving the application of prejudgment remedies to creditor—debtor disputes. *See e.g., Id.* at 2114, 2115, 2116; *see also, Id.* at 2120–2121, 2122 (Rehnquist, CJ., concurring). The Court's repeated emphasis that "disputes between debtors and creditors more readily lend themselves to *ex parte* assessments of the merits" suggests that *Doehr*'s affirmance of *Pinsky* turns largely on the high risk implicit in a probable cause determination predicated on an *ex parte* showing in cases like *Pinsky* where the underlying claim involves complex and disputed factual allegations. *See Doehr*, 111 S.Ct. at 2113–2115; *see also Pinsky*, 898 F.2d at 856.[3]

In light of the limited scope of both *Pinsky* and *Doehr*, the court believes that the issue of the Statute's validity as applied to the factual context of this dispute is still

---

**3.** The court notes that the Supreme Court, in summarizing the Second Circuit's ruling in *Pinsky*, appears to interpret Judge Pratt's opinion, at least in part, as being based on the factual contrast between the nature of the disputes in *Mitchell* and *Mathews* and the controversy in *Pinsky* and the high risk that factually complex disputes pose in an *ex parte* determination of probable cause:

Judge Pratt observed that in contrast [to *Mitchell* and *Mathews*] the present case involved the fact-specific event of a fist fight and the issue of assault. He doubted that the judge could reliably determine probable cause when presented with only the plaintiff's version of the altercation.
*Doehr*, 111 S.Ct. at 2111.

unsettled. Unlike the fist fight in *Pinsky*, the allegations upon which the defendants predicated their attachment of the Shaumyans' real property are, at least in this court's view, relatively " 'uncomplicated matters that lend themselves to documentary proof' and that '[t]he nature of those issues at stake minimizes the risk that the writ will be wrongfully issued by a judge.' " *Pinsky*, 898 F.2d at 856, quoting *Mitchell*, 416 U.S. at 609–610, 94 S.Ct. at 1901. Here, Sidetex brought a state court action against the Shaumyans to collect an outstanding balance of $5,700 for material used and work performed on their house pursuant to a written contract between the parties. The action was initiated after the Shaumyans refused to pay the outstanding balance because of their dissatisfaction with the type of replacement windows installed by Sidetex. Sidetex, moreover, sought the attachment on the real property that was the subject of the underlying dispute. Because this underlying dispute is in essence a straight forward breach of contract for work performed on the real property in issue, and because it involves relatively uncomplicated, verifiable facts and an easily documented, specified amount of damages, matters arguably more akin to a dispute between a creditor and debtor, *see e.g., Mitchell*, 416 U.S. at 609–610, 94 S.Ct. at 1901–1902, or an action involving a mechanic's lien, *see e.g., Spielman–Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz. 1973), *aff'd*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), than it is to an intentional tort claim predicated on allegations of a fist fight, the court believes that *Pinsky* and *Doehr*, without more, are not dispositive of the Statute's unconstitutionality as applied in *Shaumyan I.*

In this regard, the court finds Chief Justice Rehnquist's efforts to "point out, more emphatically than the Court does, the limits of [*Doehr's*] holding" helpful. *Id.*, 111 S.Ct. at 2121 (Rehnquist, CJ., concurring). Of particular interest to the court is the Chief Justice's implicit view that the Court holds the Statute unconstitutional *"as applied here,"* an *ex parte* attachment of real property predicated on an intentional tort claim. *Id.* at 2122 (emphasis added). In attempting to define the limits of *Doehr*, Chief Justice Rehnquist points out that the Court has expressly upheld *ex parte* attachments of real property in disputes very similar to that underlying *Shaumyan I.* Specifically, the Chief Justice distinguishes the rationale underlying the Court's summary affirmance of Arizona's mechanic's lien statute in *Spielman–Fond* from the reasoning behind the Court's ruling in *Doehr*:

> [t]he existence of such a [mechanic's] lien upon the very property ultimately posted or noticed distinguishes those cases from the present one [*Pinsky* and *Doehr*], where the plaintiff had no pre-existing interest in the real property which he sought to attach. Materialman's and mechanic's lien statutes award an interest in real property to workers who have contributed their labor, and to suppliers who have furnished material, for the improvement of the real property. Since neither the labor nor the material can be reclaimed once it has become part of the realty, this is the only method by which workmen or small businessmen who have contributed to the improvement of the property may be given a remedy against a property owner who has defaulted on his promise to pay for the labor and the materials.

*Id.* at 2122.

Chief Justice Rehnquist's distinction between *Doehr* and the Court's affirmance of the Arizona mechanic's lien statute supports this court's view that the scope of *Doehr's* holding is at best unclear when considered in light of the claim underlying the attachment in *Shaumyan I.* Pursuant to a contract, Sidetex provided materials and labor for the "improvement of the real property" owned by the Shaumyans, admittedly, improvements that the Shaumyans contend are unsatisfactory. Nonetheless, the Shaumyans have chosen to withhold payment for work performed on their house by Sidetex. This dispute, therefore, appears more analogous to a case in which the attaching plaintiff has a "pre-existing interest" in the real property sought for attachment than to *Pinsky* and *Doehr* in

which the attaching plaintiff had no such pre-existing interest in the property.

The court notes that neither *Pinsky* nor *Doehr* were harmonious declarations of law. *Pinsky* was a majority, rather than unanimous, ruling from a three judge panel. Although Judge Mahoney concurred with Judge Pratt in the result, Judge Newman dissented altogether. Judge Mahoney, moreover, joined Judge Pratt "only because this provision [the Statute] allows attachments of real property whenever a plaintiff makes a sworn showing to a judge 'that there is probable cause to sustain the validity of the plaintiff's claim' ...". *Id.* at 858 (Mahoney, J., concurring). As was the case with *Doehr*, the court notes that Judge Mahoney's concern with the Statute's lax probable cause requirement is particularly acute in the context of the intentional tort claim underlying the attachment in *Pinsky*, a claim significantly different in nature from the claim underlying the attachment in *Shaumyan I.*

For its part, *Doehr* was a majority opinion with respect to parts I, II, III exclusively. Only three current members of the Court, Justices White, Stevens, and O'Connor, however, joined in part IV's attempt to declare the Statute void on broader grounds. *See Doehr*, 111 S.Ct. at 2109. Chief Justice Rehnquist's concurrence, moreover, suggests that the exact scope of the majority's opinion is at best ambiguous. *Id.* at 2121 (Rehnquist, C.J., concurring).

Finally, the court would be remiss if it did not recognize that the Connecticut Supreme Court appears to share its narrow reading of *Doehr*. In *Union Trust Co. v. Heggelund*, 219 Conn. 620, 594 A.2d 464 (1991), a post *Doehr* ruling, the Connecticut Supreme Court indicated:

> [t]he recent decision of the United States Supreme Court in *Connecticut v. Doehr*, in which an ex parte attachment pursuant to the Connecticut statute in a tort action was held to violate due process, has no direct bearing on this controversy ... Even if the attachments were ex parte, this is not a tort suit, but a suit on a debt, and 'disputes between debtors and creditors more readily lend

themselves to accurate ex parte assessments of the merits.' Here, as in *Mitchell v. W.T. Grant Co.*, 'the risk of error was minimal because the likelihood of recovery involved uncomplicated matters that lent themselves to documentary proof....'

*Heggelund*, 219 Conn. at 624, n. 3, 594 A.2d 464 (citations omitted). *Heggelund* is further evidence, therefore, that this court is not alone in its view that *Pinsky* and *Doehr*, without more, do not amount to a *per se*, facial invalidation of the Statute as applied in all contexts.

### B. Attachment Bond

■ The Shaumyans contend that, even if the ultimate finding of *Pinsky* and *Doehr* is limited to the facts of the case, the Statute, nonetheless, is constitutionally infirm on its face because it lacks a provision requiring a plaintiff to post a bond or security before obtaining an attachment. In support of this view, the Shaumyans rely on the plurality's ruling in part IV of *Doehr* as well as their claim that other legal authority and jurisdictions "universally" require a bond. (*See* Filing No. 94, Pltf.'s Mem.Supp. at 7–19.) The Shaumyans insist that *Doehr*, along with these other sources, creates a solid foundation on which to invalidate the Statute on its face and, thus, they invite the court to adopt this nearly "unanimous" view. Respectfully, the court declines.

Again, as a preliminary matter, the court notes that it discussed the issue of the attachment bond in detail in *Shaumyan I.* See *Shaumyan I*, 716 F.Supp. at 80–82; *see also Pinsky*, 898 F.2d at 864 (Newman, J., dissenting) (noting that this issue was treated in the court's prior ruling in *Shaumyan I*). Throughout its analysis in *Shaumyan I*, moreover, the court considered many, if not all, of the other authorities that the Shaumyans insist are virtually unanimous on the bond issue and, notwithstanding those sources, found the lack of a bond requirement insufficient to render the Statute defective. *See generally Shaumyan I*, 716 F.Supp. at 69–82. In

its reconsideration of its position on the bond pursuant to the Remand, therefore, the court finds it unnecessary to regurgitate cases and authorities discussed previously in *Shaumyan I* and instead, confines its inquiry to whether *Pinsky* and *Doehr*, by themselves, require a change in the court's position on the lack of a bond provision. After careful reconsideration of this issue in light of *Pinsky* and *Doehr*, the court concludes that no such change is warranted.

In *Pinsky*, the second circuit rejected expressly the view that the lack of a provision requiring a bond or other security prior to obtaining an attachment rendered the Statute constitutionally infirm. Only Judge Pratt viewed the lack of a bond provision as "a flaw of constitutional magnitude." *Pinsky*, 898 F.2d at 858. Judge Mahoney, however, stated in his concurrence that he did "not agree ... with Judge Pratt's conclusion 'that the lack of a bond provision in the attachment procedure itself is a flaw of constitutional magnitude' ..." *Id.* at 858 (Mahoney, J., concurring). Joining Judge Mahoney on the bond issue was Judge Newman who, in his dissenting opinion, "fundamentally" disagreed with the view that a "damage suit or a bond requirement is a constitutionally mandated component of a valid prejudgment remedy." *Pinsky*, 898 F.2d at 864 (Newman, J., dissenting). As this court concluded in *Shaumyan I*, Judge Newman noted that "none" of the four prior Supreme Court decisions which have considered various forms of prejudgment remedy statutes "holds that due process requires the attaching plaintiff to post a bond and respond in damages for wrongful attachment." *Id.* The dissent's view that "[d]ue process ... is not a guaranty of damage remedies for wrongful action, much less of security for the recovery of such damages," *Id.*, together with Judge Mahoney's concurring opinion, reinforces the court's belief that *Pinsky* confirms rather than contravenes its analysis of the bond issue.

In *Doehr*, a plurality of four justices, three of whom currently sit on the Court, found the Statute's lack of a bond provision to be constitutionally problematic. Thus, *Doehr*, too, falls short of producing a majority view that contravenes *Shaumyan I.*

At best, *Doehr* reflects a majority view that the bond issue was not properly before the Court and, thus, has yet to be decided. *See Doehr*, 111 S.Ct. at 2116 n. 9. At worst, the plurality's *dicta* in part IV of *Doehr* is "upon analysis so vague that the discussion is not only unnecessary, but not particularly useful." *Doehr*, 111 S.Ct. at 2122 (Rehnquist, CJ., concurring). Under either interpretation, *Doehr* is insufficient to persuade this court to reverse itself on the bond issue.

Finally, the court notes two important caveats concerning the scope of its ruling today. First, the court's affirmance of its prior ruling in *Shaumyan I* should not be interpreted as a *per se* validation of the Statute as applied to all situations not considered by *Pinsky* and *Doehr*. Rather, the court's belief that the Statute is constitutional as applied in *Shaumyan I* is limited exclusively to the facts of this case and its application to a breach of contract action involving an attachment of real property in which the attaching plaintiff seeks payment for material installed and labor performed on that piece of real property. The court offers no view on the Statute's validity as applied in contexts other than that addressed in *Shaumyan I.* To the extent that the court's ruling in *Shaumyan I* suggests anything to the contrary, that portion of *Shaumyan I* is modified accordingly.

Second, the court's ruling today should not be construed as holding that *Pinsky* and *Doehr* found the Statute constitutional in the context of *Shaumyan I.* To the contrary, *Pinsky* and *Doehr* simply do not address, at least in this court's opinion, the constitutionality of the Statute as applied to the underlying breach of contract claim in *Shaumyan I* and, thus, do not warrant a reversal of that ruling. Accordingly, the court believes it prudent to let stand its prior ruling in *Shaumyan I*, essentially in its entirety, in order to allow the Court of Appeals an opportunity to consider the issue anew with a relatively clear and unmuddled record of this court's prior consideration of this matter.

*Conclusion*

For the reasons stated, after careful reconsideration in light of the Court of Appeals' ruling in *Pinsky* and the Supreme Court's ruling in *Doehr*, the court affirms its granting of Defendants' motions for summary judgment in *Shaumyan I.* To the extent that anything in *Shaumyan I* may be interpreted as holding the Statute constitutional in any other context or dispute beyond that raised by the parties in this case, that part of the court's ruling is modified accordingly.

SO ORDERED.