**NEW DESTINY DEVELOPMENT CORP., et al.**

v.

**Samuel PICCIONE, Jr. et al.**

**No. 3:91CV00429 (AHN).**

United States District Court, D. Connecticut.

Aug. 11, 1992.

Peter A. Kelly, New Haven, Conn., for plaintiffs.

Tracy Alan Saxe, William C. Eustace, Sachs, Berman, Rashba & Shure, New Haven, Conn., for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

New Destiny Development Corp., Paul Limone, Eugene O'Neill, Liberty Properties, LTD., and Liberty Property Associates Limited Partnership (collectively referred to as "plaintiffs") bring this action against Samuel Piccione, Jr., and Scalesse, Scalesse and Piccione (collectively referred to as "defendants"). This action arises over a property foreclosure suit initiated in state court by the defendants and their recording of a lis pendens giving notice of that fore-

closure action pursuant to Conn.Gen.Stat. § 52–325 (1991 Supp.) ("§ 52–325"). Plaintiffs claim that the defendants violated their constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by the recording of the notice of lis pendens on the land records.[1] Plaintiffs seek a declaratory judgment that § 52–325, on its face, violates the Due Process Clause of the Fourteenth Amendment. Currently pending before the court are the parties cross-motions for summary judgment on § 52–325's constitutionality.[2] For the reasons stated below, the court grants defendants' motion for summary judgment, and denies plaintiffs' motion for summary judgment.

## STANDARDS

In a motion for summary judgment, the moving party bears the burden of establishing that no genuine issues of material fact are in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All factual inferences are drawn in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989). This burden does not shift when cross-motions are before the court. Each motion must be judged on its own merits. *Schwabenbauer v. Board of Educ.,* 667

1. This court notified the Connecticut Attorney General of the state's right to intervene in the matter pursuant to 28 U.S.C. § 2403(b). (*See* Filing No. 27.). The Attorney General filed a brief on behalf of the State of Connecticut as amicus curiae. (*See* Amicus Br. of State of Conn., Filing No. 28.).

2. Although the defendants did not file a motion for summary judgment, the court construes de-

fendants motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) (*See* Filing No. 19), in addition to defendants' brief in opposition to plaintiffs' motion for summary judgment (*See* Filing No. 23), as a cross-motion for summary judgment. The Court also notes that defendants filed a statement of material facts pursuant to Local Rules 9(c). (*See* Filing No. 21.).

F.2d 305, 314 (2d Cir.1981). In the case before the court, the parties do not dispute any facts material to the issue of § 52–325's constitutionality. Rather, they differ in their interpretations of the applicable law.

### FACTS

Applying the aforementioned rules, the court finds the following facts undisputed:

1. On or about November 22, 1983, Samuel Piccione, John Scalesse and Richard Scalesse conveyed to Liberty Property Associates Limited Partnership ("Liberty Associates") two parcels of real estate in the city of New Haven, known generally as 148–156 Temple Street and 158–166 Temple Street (the "properties").

2. Liberty Associates executed a note in the amount of $1.8 million payable to Samuel Piccione, Jr., John Scalesse, and Richard Scalesse. The note was secured by a wrap around mortgage on the properties.

3. On December 6, 1984, Samuel Piccione, Jr. executed a release of the mortgage.

4. The release of the mortgage was recorded ten months later in October, 1985.

5. On November 25, 1986, John M. Scalesse and Samuel Piccione, Jr. instituted a foreclosure action in New Haven Superior Court of the above mortgage. *John Scalesse, et al. v. Liberty Associates Limited Partnership, et al.*, No. CV–86–0242922–S (Conn.Super.Ct. filed Nov. 25, 1986).

6. On November 25, 1986, in connection with their foreclosure action, Piccione and Scalesse also recorded a notice of lis pendens on the land records pursuant to Conn. Gen.Stat. § 52–325.

7. New Destiny Development Corp. purchased the properties from Liberty Associates on September 1, 1987.

8. On August 16, 1988, New Destiny Development Corp. moved to intervene as a party defendant in the foreclosure action in state court.

9. All of the plaintiffs in this action are named defendants in the foreclosure action that is still pending in the New Haven Superior Court.

### DISCUSSION

■ As a preliminary matter, the court rejects defendants' contention that the court abstain from deciding the constitutional validity of § 52–325 and dismiss the case for lack of subject matter jurisdiction. Although not entirely clear, defendants appear to predicate their abstention claim on the "dual litigation" doctrine. The crux of the argument appears to be that because there is prior pending state court litigation challenging the lis pendens, the court should abstain from deciding the constitutional issue.[3] The court disagrees.

The court notes that the pending state court litigation does not address the constitutional validity of § 52–325 itself, but only the merits of the lis pendens. The court concludes that the principles of the abstention doctrine do not warrant the dismissing of this action on jurisdictional grounds. In support of this conclusion, the court directs the parties to its detailed discussion of the abstention issue in *Shaumyan v. O'Neill*, 716 F.Supp. 65 (1989) ("*Shaumyan I*"), *modified on other grounds*, 795 F.Supp. 528 (D.Conn.1992) ("*Shaumyan II*"), rejecting a similar attack on this court's jurisdiction to consider the constitutionality of the Connecticut Prejudgment Remedy Statute (the "PJR Statute"), Conn.Gen.Stat. § 52–278e(a)(1). Accordingly, the court confines the remainder of its ruling exclusively to the constitutional due process challenge to § 52–325 raised by the plaintiffs.

---

**3.** Defendants filed a motion pursuant to Fed. R.Civ.P. 12(b)(1) in response to plaintiffs' motion for summary judgment. (*See* Filing No. 19.) Although defendants argue their lack of subject matter jurisdiction claim in terms of the "dual litigation doctrine", the essence of their argument appears to claim that the court *abstain* from exercising jurisdiction. The court notes, moreover, that plaintiffs only address defendants' motion to dismiss in a cursory footnote as part of their reply brief in support of their motion for summary judgment. (*See* Pltf.'s Rep.Br., Filing No. 25 at 1 n. 1.)

Section 52–325 authorizes a party involved in a dispute over real property to record notice of the pending litigation in the office of the town clerk so that third parties acquiring an interest in the property are made aware "of the pendency of the action." [4] Conn.Gen.Stat. § 52–325(a). The notice of lis pendens serves to put subsequent purchasers on notice that their interest in the property will be affected by the outcome of the proceedings. *Id.* § 52–325 also provides the owner of the property the immediate opportunity to set aside the lis pendens. *Id.*

Plaintiffs mount a two pronged facial challenge to § 52–325 relying primarily on the recent United States Supreme Court decision in *Connecticut v. Doehr*, —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (Connecticut's PJR statute unconstitutional where a movant seek real estate attachment without prior notice and hearing in tort action). First, they contend that § 52–325 lacks notice and hearing provisions in addition to adequate judicial supervision, requisite procedural safeguards, thereby rendering it infirm in light of *Doehr*. In the alternative, they invite the court to adopt the minority position in *Doehr* that § 52–325 is unconstitutional in the absence of a provision requiring a moving party to post a surety bond.[5] Finally, plaintiffs argue that § 52–325 does not provide adequate judicial supervision to meet the procedural safeguards recognized in *Doehr*.

■ The United States Supreme Court has established a three-fold inquiry into determining if a person has been deprived of property without due process of law in violation of the Fourteenth Amendment: (1) What is the nature of the governmental involvement in the deprivation? *Lugar v. Edmondson Oil Co., Inc., et al.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); (2) Does the particular governmental action constitute the taking of a "significant property" interest? *Doehr*, —— U.S. at —— ——, 111 S.Ct. at 2112–13; (3) If the deprivation is subject to the limitations of due process, what form of process is due? *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In applying this analysis, moreover, the constitutional inquiry comes to an end if the court fails to find both state involvement in the deprivation complained of and an actual deprivation of a significant property interest. Applying these rules, the court finds § 53–325 passes constitutional muster.

## I. *State Action*

■ In *Doehr*, the United States Supreme Court said that although prejudgment remedy statutes ordinarily involve disputes between private parties, there is significant governmental assistance by state officials and through state procedures. In its analysis of Connecticut's PJR Statute, *Doehr* concluded that there is

---

**4.** Conn.Gen.Stat. § 52–325 (1991 Supp.). The statute states in relevant part:

(a) In any action in a court of this state or in a court of the United States (1) the plaintiff or his attorney, at the time the action is commenced or afterwards, or (2) a defendant, when he sets up an affirmative cause of action in his answer and demands substantive relief at the time the answer is filed, if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens.... Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action ...

and subsequent purchasers shall be bound by proceedings taken after the recording of such notice. *Id.*

**5.** The court notes that plaintiffs' complaint simply alleges that the Statute is unconstitutional

because "no bond is required." (*See* Compl.) Even though the plaintiff submitted two briefs in support of their claim, the only mention of the bond issue is a one sentence summation of the *Doehr* Court's holding: "[F]our of the justices were of the opinion that due process requires a plaintiff to put up a bond or other security in addition to the requirements of a pre-filing hearing." (*See* Pls.Br. In Supp. Of Their Mot. For Summ. J., Filing No. 14 at 3.) Indeed, this is the only mention by either party of the bond issue in *any* subsequent filings. Because the parties have failed to brief the issue adequately and because this court rejected the identical argument in *Shaumyan II*, 795 F.Supp. at 533 – 534 the court rejects the notion that procedural due process mandates the posting of a bond and confines the rest of its analysis to plaintiffs' challenge to § 52–325's procedural safeguards.

"state action 'substantial enough to implicate the Due Process Clause.'" *Doehr*, —— U.S. at ——, 111 S.Ct. at 2112 *quoting Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). In the absence of any case law to the contrary, the court concludes that *Doehr*'s finding of the requisite state action applies with equal force to a lis pendens statute where "a town clerk" facilitates the deprivation by placing the notice on the land records. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 161 n. 10, 98 S.Ct. 1729, 1736 n. 10, 56 L.Ed.2d 185 (1978) (state action element is met in cases where a government official participates in the physical deprivation of property). Accordingly, the court finds that § 52–325 implicates governmental involvement substantial enough to trigger due process concerns.

## II. Deprivation of Significant Property Interest

■ Similarly, *Doehr*, adopting the reasoning of the Second Circuit, *see Pinsky v. Duncan*, 898 F.2d 852, 854 (1990), summarily determined that the "significance" of the property deprivation created by the Connecticut PJR statute was sufficient to create the need for constitutional scrutiny. Specifically, the *Doehr* Court found:

> We agree with the Court of Appeals that the property interests that attachment affects are significant. For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause.

*Doehr*, —— U.S. at —— ——, 111 S.Ct. at 2112–2113. The court notes, moreover, that the cases addressing lis pendens procedures consistently hold that such procedures deprive a person of a property interest significant enough to warrant Fourteenth Amendment protection. *See, e.g.*,

*Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1324–25 (3d Cir.1982); *Williams v. Bartlett*, 189 Conn. 471, 478 n. 5, 457 A.2d 290 *aff'd*, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983); *Kukanskis v. Griffith*, 180 Conn. 501, 509, 430 A.2d 21 (1980). Although the interests deprived by lis pendens may be less than the interests deprived by a prejudgment attachment, the interest deprived here is significant enough to implicate the requirements of due process.

## III. What Process Is Due?

■ *Doehr* reaffirmed "the truism that '[d]ue process unlike some legal rules, is not a technical conception with fixed content unrelated to time, place and circumstances.'" *Doehr*, —— U.S. at ——, 111 S.Ct. at 2112, *quoting Mathews*, 424 U.S. at 334, 96 S.Ct. at 902 (citation omitted). In determining the degree of process due, therefore, the court is guided by *Doehr*'s application of the well established threefold analysis originally set forth in *Mathews:* (1) Consideration of the private interest that will be affected by the measure; (2) Examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; (3) Principal attention to the interest of the party seeking the measure with due regard for any ancillary interest the government may have in providing the procedure or foregoing the added burden of providing greater protection.[6] *Doehr*, —— U.S. at ——, 111 S.Ct. at 2112.

Courts that have measured the constitutionality of lis pendens statutes under this analysis have uniformly held that § 52–325 comports with the requirements of procedural due process. *Williams*, 189 Conn. at 480–81, 457 A.2d 290; *Wallingford Staffordshire Commons Assoc., Inc. v. Staffordshire Associates, et al.*, 42 Conn.Sup. 241, 249–50, —— A.2d —— (1992) (Mayo, J.); *See also Doehr*, —— U.S. at ——, 111 S.Ct. at 2122 (Rehnquist, C.J., concurring) (expressly approving *Williams*); *Chrysler Corp. v. Fedders Corp.*, 670 F.2d at 1331 (New Jersey's lis pendens procedure is not constitu-

---

6. In *Doehr,* the court noted that because prejudgment remedies are used by private parties, rather than the government, the focus should be on the interests of the party seeking the remedy.

tionally infirm on due process grounds). These case are fatal to plaintiffs' due process challenge.

In *Williams*, the Connecticut Supreme court dealt with challenges to Connecticut's Lis Pendens Statute virtually identical to those made by the plaintiffs in this case. *Williams* applied the three part *Mathews'* analysis finding that "[i]n view of the limited effect caused by the filing of the notice of lis pendens upon the property of the record owner, when balanced against the interests of the state and the party utilizing the lis pendens procedure," it could not conclude that § 52–325 fails to comport with the requirements of due process.[7] *Williams*, 189 Conn. at 480, 457 A.2d 290. The court emphasized, moreover, that § 52–325 provides for a prompt post-filing hearing so as to eliminate the risk of an erroneous deprivation of property interests.[8] Finally, the court noted that " '[i]f the power of the courts to determine the rights of the parties to real property could be defeated by its transfer, *pendente lite*, to a purchaser without notice, additional litigation would be spawned and the publics' confidence in the judicial process could be undermined.' " *Williams*, 189 Conn. at 480, 457 A.2d 290 *quoting Chrysler Corp. v. Fedders Corp.*, 670 F.2d at 1329.

Plaintiffs insist that *Doehr* effectively reversed the Connecticut Supreme Court's ruling in *Williams*. Specifically, plaintiffs rely on *Doehr* for the proposition that Connecticut's PJR Statute is unconstitutional on its face and, therefore, by inference, the lis pendens statute is also unconstitutional. Plaintiffs contend that the application of the *Mathews* analysis in light of *Doehr* is dispositive of its position that § 52–325 is constitutionally problematic. The court disagrees.

First, the court does not share plaintiffs' broad reading of *Doehr*. Indeed, this court interpreted *Doehr* and its predecessor case,

*Pinsky*, as holding only that Connecticut's PJR Statute is unconstitutional when applied in the context of an underlying tort action. *Shaumyan II*, 795 F.Supp. at 531–532. In *Shaumyan II*, this court noted repeatedly that neither *Doehr* nor *Pinsky* addressed the constitutionality of the prejudgment remedies statute when applied in the debtor-creditor context. *Id.* In reaffirming its ruling in *Shaumyan I*, the court concluded that *Pinsky* and *Doehr*'s finding that the prejudgment attachment was defective was limited to the specific context of the underlying state litigation in that case and was not dispositive of § 52–325's validity in other contexts. *Id.* at 17.

Second, the plurality in *Doehr* carefully distinguished it analysis of the Connecticut prejudgment attachment remedy from other types of prejudgment remedies. Specifically, the Court noted it's prior summary affirmance of a mechanic's lien statute in *Spielman–Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz.1973), *aff'd* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974):

> Unlike the case before [the court], the mechanic's lien statute in *Spielman–Fond* required the creditor to have a pre-existing interest in the property at issue.... [A] heightened plaintiff.interest in certain circumstances can provide a ground for upholding procedures that otherwise suspect.

*Doehr*, —— U.S. at ——, 111 S.Ct. at 2113 n. 4. While the plurality did not specifically address a notice of lis pendens in this context, the court notes that like the mechanic's lien, a dispute involving a lis pendens involves only interests in real property and, like the mechanic's lien, the claimant in an action involving the filing of a lis pendens has a "heightened interest" in that property. The court concludes that the rationale underlying the distinction made in

---

**7.** The *Williams* court.addressed the absence of a bond provision in a footnote, simply stating that the lack of such a provision did not render the Statute constitutionally infirm. *Id.* 189 Conn. at 479 n. 6, 457 A.2d 290.

**8.** The Connecticut Legislature amended § 52–325 to provide for a prompt post-filing hearing in response to the Connecticut Supreme court's earlier ruling in *Kukanskis*, in which the court invalidated the Statute for not providing a hearing at a meaningful time and in a meaningful manner. 180 Conn. 501, 430 A.2d 21.

*Doehr* applies with equal force to the lis pendens remedy.

Third, in his concurring opinion in *Doehr,* Chief Justice Rehnquist expressly approved of the Connecticut Supreme Court's holding in *Williams.* Like the plurality, Justice Rehnquist distinguished *Doehr,* a case where the movant had no prior interest in the property in issue, from cases where the party seeking the prejudgment remedy had such an interest. In drawing this distinction, the Chief Justice specifically points to the Court's summary affirmance of *Williams'* upholding of the lis pendens statute as part of a "class of cases" distinguishable by the movant's interest in the property. *Doehr,* —— U.S. at ——, 111 S.Ct. at 2122 (Rehnquist, C.J., concurring). The court, therefore, believes that the scope of *Doehr's* holding fails to implicate the validity of *Williams* and, despite plaintiffs' claim to the contrary, arguably reconfirms the Connecticut Supreme Court's view that the lis pendens procedure is constitutional.

Finally, the Connecticut courts that have scrutinized the constitutionality of § 52–325 since *Doehr* have declined to alter *Williams'* view of its validity. In *Wallingford,* the Connecticut Superior Court reaffirmed expressly the analysis articulated in *Williams.* *Wallingford,* 42 Conn.Sup. at 248, —— A.2d ——. In *Wallingford,* Judge DeMayo applied the *Mathews'* analysis and found that although the deprivation is sufficient to trigger due process, "the degree of deprivation is far lower than the deprivation involved in an *ex parte* attachment." *Id.* The Court reasoned that the risk of an erroneous deprivation of a property interest is far less than in *Doehr* because the claim is directly related to the real estate, and because "disputes between debtors and creditors more readily lend themselves to accurate *ex parte* assessments of the merits." *Id.* at 252, —— A.2d —— *quoting Doehr,* —— U.S. at ——, 111 S.Ct. at 2115. *Wallingford* concluded that since both par-

ties must have an "existing interest" in the real property itself, any party seeking to record the notice has a significant interest to protect against a prejudgment transfer of the property.[9] *Id.*

The court finds Judge DeMayo's analysis of the issue in *Wallingford* persuasive and sees no reason why it should depart from the uniform view of Connecticut's courts, and arguably the United States Supreme Court, that § 52–325 passes constitutional muster. Accordingly, plaintiffs' motion attacking the constitutional validity of § 52–325 is denied and the court finds that the defendants are entitled to judgment as a matter of law in this case.

### CONCLUSION

For the reasons stated above, the court grants defendants' motion for summary judgment, and denies plaintiffs' motion for summary judgment.

SO ORDERED.

---

**9.** The *Wallingford* court also notes the ancillary governmental interest in preventing complex third party disputes from arising as a result of a transfer of the property without notice. *Id.* quoting *Chrysler Corp. v. Fedders Corp.,* 670 F.2d at 1329. The state has an interest in assuring that potential purchasers are able to ascertain whether there is a claim affecting the property. *Id.*