FORD MOTOR COMPANY, RESPONDENT, v. THE MAYOR AND TOWN COUNCIL OF THE TOWN OF KEARNY, APPELLANT.

Submitted December 10, 1917—Decided March 4, 1918.

1. Statutory liens upon the landlord's estate in leased real property for water rents or charges for water supplied thereon to the tenant, must depend for their validity either upon the taxing power or upon contract.

2. If it is the taxing power which is relied upon, the imposition, in order to be constitutional, must be laid under uniform rules according to the true value of the property taxed, or in accordance with special benefit to it as a property.

3. Such a lien for charges for water supplied to a tenant by measure at a fixed price per thousand cubic feet cannot be sustained under the taxing power. It must depend upon contract expressly or impliedly authorized by the landlord.

4. The fact that a statute providing for a lien against the "premises" for unpaid-for water supplied thereto by a municipality, is on the statute books, reads into every lease when made an authority to the tenant to subject such premises to such lien for the unpaid-for water which the circumstances indicate the parties contemplated should be supplied (within the limitations of the statute) to the tenant upon the premises in pursuance of the lease.

5. Where the statute makes it the "duty" of the municipality to shut off the supply of water for non-payment at maturity of any bill for charges for water, there can (in the absence of other authority) be no lien against the landlord's estate in the property for water supplied to the tenant, on his contract alone, in violation of this duty after such default and after a reasonable time thereafter for ascertaining the same and for shutting off the supply.

6. Where the leased property was vacant land without any connection with the municipal water supply, and the tenant without the landlord's authority, knowledge or consent, caused the municipal water supply to be introduced and water to be supplied by measure to a garbage disposal plant which he established —*Held*, that the landlord's estate in the land was not liable to a lien for unpaid water charges.

On appeal from the Supreme Court.

For the appellant, *Clyde D. Souter*.

For the respondent, *Day, Day, Smith & Slingerland*.

The opinion of the court was delivered by

WHITE, J.    This is an appeal from an order of the Supreme Court overruling a demurrer to an alternative writ of *mandamus* and awarding a peremptory writ commanding the town of Kearny to cancel of record certain liens, entered under section 9 of the act of 1884, against the landlord's land for unpaid bills for water introduced and supplied to it (without his knowledge or consent) by measure under contract with his tenant, for a garbage disposal plant which the tenant established on the land. The liens cover unpaid bills during a period of nearly three years, the town not having shut off the water upon default in payment of the first bill as in "duty" bound to do under the act.

Statutory liens upon the landlord's estate in leased real property for water rents or for water charges for water supplied thereon to the tenant, must depend for their validity either upon the taxing power or upon contract.

If it is the taxing power that is relied upon, the imposition, in order to be constitutional, must be applied by uniform rules according to the true value of the property taxed or in accordance with special benefit to it as a property. *Jersey City* v. *Vreeland*, 43 *N. J. L.* 638; *affirming Vreeland* v. *Jersey City, Id.* 135.

The sale to a consumer of water by measure at a fixed price per thousand cubic feet, is obviously not a tax dependent in amount in any way either upon the true value of the property which he occupied or upon any special benefit to that property. Such a consumer might be a banker occupying a property worth a hundred thousand dollars, but using only fifty dollars' worth of natural water a year; or he might be a bottler or a milkman in a twenty-foot store (with a basement), in the same block, which was worth only a thousand dollars, but using a thousand dollars' worth of water per annum.

The lien given by the statute, therefore, in case of water sold by measure, must derive its vitality from the sale itself, as such; that is, from contract. Whatever the purchaser of the water had authority, express or implied, to bind by his contract, to that the lien under the statute will attach. Further than that it cannot go.

That an absolute stranger, a trespasser or a mere licensee, by contract with the municipality for water to be "conducted and supplied" to my property without my knowledge, cannot subject it to lien for the water so supplied is, of course, obvious; but the only reason that he cannot do so under the literal language of the statute in question, is that he has no authority from me, express or implied, to bind my property by the contract.

Clearly, therefore, the language of the statute is to be construed in the light of this underlying principle, for, under the well-established doctrine in this state, where two constructions of a statute are permissible, one of which would render it constitutional and the other unconstitutional; the constitutional construction is the one to be adopted. *State* v. *Sutton,* 87 *N. J. L.* 192.

Such a construction, therefore, limits the lien to those "premises to which the water was conducted and supplied" *with the express or implied authority of the owner.*

It is argued, however, that a municipality supplying water under the statute cannot in reason and in good public policy be required to search the title of every property to which water is supplied in order to ascertain the true owner. This is true, and the legislature has properly protected the municipality against any such necessity by authorizing it to charge a minimum amount (of its own fixing) in advance, and to cut off the supply for non-payment of any meter or other water bill at the expiration of the period which it itself fixes as the time when payment shall be made.

It is further said that there cannot under any circumstances be a lien against the owner's estate where the water is supplied to a tenant by measure. We find it difficult to

accept this interpretation of the statute. Its language is, "to furnish water to individuals, and establish general rates of price," &c., and the lien provision is "that the rents for the use of water which" said body "may supply as aforesaid, shall draw interest from the time they become due and shall be and remain until paid a lien upon the premises to which the same may be conducted and supplied." The use here of the word "rents," we think, is without significance. It refers to the "rates of price," which the act authorizes the town to charge for the water supplied, which phrase is broad enough to cover the price per thousand cubic feet for measured water, as well as a rate based upon the number and character of the fixtures or outlets supplied.

That the owner's estate is made subject to the lien provisions of a statute in force when he made the lease, for whatever water the lease authorized the tenant to procure to be supplied to the premises, is in principle established by the decision of this court in *Vreeland* v. *Jersey City,* 37 *N. J. Eq.* 574 (affirming *Vreeland* v. *O'Neil,* 36 *Id.* 399); sustained in *Provident Institution* v. *Jersey City,* 113 *U. S.* 506, holding that a mortgage on a house and lot in Jersey City given after the charter of 1871, will be postponed to the lien for water rates assessed in pursuance of that charter for water taken from the city water works and used on the premises subsequent to the date of the mortgage.

We think, therefore, that the fact that the statute providing for the lien was placed and remained on the statute books, must be taken to read into every lease subsequently made respecting any "premises," an authority to subject such premises to a lien for the unpaid-for water, whether charged for by measure or otherwise, which the circumstances indicate the parties contemplated should be supplied (within the limitations of the statute) to the tenant on the premises in pursuance of such lease.

Turning now to the present case it presents two aspects, involving (a) the water charges incurred after default in payment of the first bill to mature and the failure of the town to

cut off the tenant's supply within a reasonable time after such default, and (*b*) the charge for water covered by such first bill and for water supplied within such reasonable time after default.

As to the former, viz., the lien for the water supplied after it became the town's "duty" under the statute to cut off the supply for non-payment, there can be no doubt that the lien cannot stand. The water was supplied to the tenant by measure, and the only possible authority which he had to bind the landlord's property for his, the tenant's, debt, was the statutory provision for the lien constructively read into the lease; but this same provision also read into the lease the requirement that if the tenant did not pay the supply must be cut off. At most, therefore, the contract entered into by the landlord authorized the tenant to bind the landlord's property for the tenant's debt for the water supplied during the first period for which default was made and for a reasonable time thereafter to ascertain default under the town's rules and to cut off the supply as required by the statute. For his debt incurred for water supplied him after that time the tenant clearly had no authority, express or implied, to bind the landlord's property, and the lien therefor must fall.

As to the lien for the tenant's debt for water supplied before the first default and within the reasonable time aforesaid thereafter, while the question is one of more difficulty, we, nevertheless, think that under the peculiar circumstances here involved, that portion of the lien also is invalid. As has been before pointed out, if the consumer were a trespasser, or a mere licensee, there would be no foundation for the lien, and while of course a tenant of a vacant piece of land without restriction as to the use to which he may put it, is in no sense either a trespasser or a mere licensee, nevertheless, in so far as he alters the land's former condition and introduces elements to which it was a stranger before, there is a similarity which is suggestive in construing the express and implied provisions of the contract upon which the validity of the lien must rest. Suppose, for instance, a man, correctly guessing

Ford Motor Co. v. Kearny.          *91 N. J. L.*

beforehand that a large munition factory employing thousands of men would be located at a certain spot and conducted there during the war, had leased an adjoining farm for five years without restriction as to its use, but without disclosing his purpose, and then had erected thereon workmen's barracks for thousands of men and had introduced water from the town water works, measured by meter, for a thousand wash spigots in the barracks, should the statute here involved be construed as reading into the lease for the farm an authority to bind it for the water so supplied to the barracks? We think not. "The premises to which the water was conducted and supplied," in the language of the statute, would in such a case, we think, clearly be the tenant's barracks and not the landlord's farm. A different question might arise (although as to that we express no opinion) if the lease had expressly contemplated the erection by the tenant of the barracks, but where the landlord knew nothing about them when he signed the lease, we think he cannot be held to have authorized his tenant to bind his property for a water-supply which was non-existent at the time and which he did not know was to be introduced.

In the present case, there was no water connection to the vacant ground when the lease was made, and there is nothing to indicate that the landlord knew that the property was to be put to a use which would require such connection. The water was in fact introduced and used entirely without his knowledge. His contract contained no express authority for the tenant to bind the leased property for water, and under the circumstances we think none is to be implied.

The judgment is affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, JJ. 14.

*For reversal*—None.