Sebastian SHAUMYAN and Maria
Shaumyan, Plaintiffs–
Appellants,

v.

Shawn Mark O'NEILL, New Haven
Firefighters Credit Union,
Defendants,

Sidetex Co., Inc. and Steven Rolnick,
Defendants–Appellees.

No. 352, Docket 92–7656.

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1992.

Decided March 3, 1993.

Joanne S. Faulkner, New Haven, CT (Brian Wolfman, Public Citizen Litigation Group, Washington, DC, of counsel), for plaintiffs-appellants.

Matthew E. Karanian, Hartford, CT (Halloran & Sage, of counsel), for defendants-appellees.

Before: KEARSE, MINER and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs-appellants Sebastian and Maria Shaumyan ("the Shaumyans") brought this 42 U.S.C. § 1983 action as a class action on behalf of themselves and others against defendant-appellee Sidetex Company, Inc. ("Sidetex") and its attorney, defendant-appellee Steven Rolnick.[1] In their complaint,

---

1. Subsequent to the filing of the Shaumyans' complaint, the other named parties to this action entered into a stipulation of dismissal and are no longer parties to this appeal. *See Shau-*

the Shaumyans alleged that the defendants deprived them of their property rights without due process by attaching their home pursuant to Connecticut's prejudgment attachment statute, Conn.Gen.Stat. § 52–278e(a)(1) (1991). Section 52–278e(a)(1) permits a plaintiff to attach a defendant's real property in the absence of a predeprivation hearing and without requiring that the plaintiff post a security bond. The district court granted the defendants' motion for summary judgment and dismissed the Shaumyans' complaint. *See Shaumyan v. O'Neill,* 716 F.Supp. 65 (D.Conn.1989) (*"Shaumyan I"*). In a subsequent opinion, the district court reconsidered its prior decision in light of the Supreme Court's decision in *Connecticut v. Doehr,* — U.S. —, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), and reaffirmed its earlier holding that Connecticut's statute was constitutional as applied to the case before it. *See Shaumyan v. O'Neill,* 795 F.Supp. 528 (D.Conn.1992) (*"Shaumyan II"*). For the reasons set forth below, we affirm the district court's finding that section 52–278e(a)(1) is constitutional as applied to this debtor-creditor dispute.

## BACKGROUND

Sebastian Shaumyan, a professor of linguistics at Yale University, and his wife, Maria Shaumyan, contracted with Sidetex on November 10, 1986 for repairs to be made to their home in New Haven, Connecticut. The repairs included painting as well as the installation of siding, storm windows, doors and shutters. The total contract price was $14,800.00. The contract specified that the Shaumyans were to pay a $3000 deposit, $4000 at the commencement of work, $3900 when the work was half completed, $1950 upon the completion of the siding, and $1950 upon the completion of the storm windows and shutters. After Sidetex had completed its performance, a dispute arose over the quality of the storm windows. In an attempt to satisfy the Shaumyans, Sidetex installed new

storm windows and charged the Shaumyans an additional $1800, representing only the cost of materials and labor. This additional work was described in a change order executed by Professor Shaumyan and a representative of Sidetex. After Sidetex installed the new windows, the Shaumyans refused to pay an outstanding balance of $3900 due on the original contract and the $1800 balance due on the change order.

Sidetex retained Steven Rolnick, who applied for an *ex parte* prejudgment attachment writ against the Shaumyans' home, pursuant to section 52–278e(a)(1), by submitting an affidavit of probable cause and a copy of Sidetex's complaint to a Connecticut Superior Court judge on July 28, 1987. The affidavit of probable cause was signed by Paul Knapp, the President of Sidetex, and stated that: the Shaumyans had signed a contract with Sidetex to install storm windows in their home; the contract price was $14,800.00; Sidetex performed its obligations under the contract; the Shaumyans refused to pay the $5700 balance due despite repeated demands by Sidetex; there were no set-offs, defenses or counterclaims against the outstanding debt; and there was "probable cause to sustain the validity of the plaintiff's claim." The superior court judge granted Sidetex's application on July 30, ordering an attachment in favor of Sidetex in the amount of $6300. Sidetex then filed a breach of contract action in Connecticut Superior Court against the Shaumyans. *See Sidetex Co. v. Shaumyan,* No. CV 87–0261076 (Conn.Super.Ct. June 21, 1989).

While Sidetex's state court action was pending, the Shaumyans filed this action in the district court on October 19, 1987 against Sidetex and Rolnick seeking: a declaratory judgment that section 52–278e(a)(1) was unconstitutional; an injunction prohibiting Sidetex from attaching their real property; and compensatory and punitive damages together with costs and attorneys' fees. In response to the Shaumyans' suit, Sidetex released the July 30 *ex parte* attachment on November 6 and be-

*myan v. O'Neill,* 795 F.Supp. 528, 528 n. 1 (D.Conn.1992). The district court never certi-

fied .the class action.

gan proceedings to obtain an attachment after a plenary hearing. After holding a hearing on December 14, 1987, a Connecticut Superior Court judge granted Sidetex's motion to attach the Shaumyans' home in the amount of $6500. This attachment was recorded on January 12, 1988. On June 21, 1989, the Connecticut Superior Court entered final judgment in favor of Sidetex on its breach of contract claim for $5700—six hundred dollars less than the amount of its original attachment against the Shaumyans' home. Six days later, the district court granted Sidetex's motion for summary judgment and dismissed the Shaumyans' complaint.

On appeal, we remanded the case to the district court for reconsideration in light of the Supreme Court's opinion in *Connecticut v. Doehr*, —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), affirming our decision in *Pinsky v. Duncan*, 898 F.2d 852 (2d Cir.1990), that Connecticut's prejudgment attachment statute was unconstitutional as applied to intentional tortfeasors. On remand, the district court affirmed its earlier decision upholding the constitutionality of the Connecticut statute as it was applied to the Shaumyans. The Shaumyans appeal from the judgment of the district court.

## DISCUSSION

### I.

Section 52–278e(a)(1) authorizes the prejudgment attachment of real property without affording prior notice or the opportunity for a prior hearing to the individual whose property is the subject of attachment. Conn.Gen.Stat. § 52–278e(a)(1) (1991). The statute also does not require a plaintiff to post a security bond to insure the payment of damages that a defendant may suffer if the attachment is later found to be wrongly issued or the claim proves to be unsuccessful. The statute does require the plaintiff to submit an affidavit of probable cause to a judge, who must then determine whether the plaintiff has demonstrated a likelihood that he will succeed on the merits before granting the writ of attachment. *Id.* The statute also provides for notice to be given to the defendant after

the attachment, informing him that he has the right to a postdeprivation hearing: to claim that no probable cause existed to sustain the claim; to request that the attachment be vacated, modified or that a bond be substituted; or to claim that some portion of the attached property was exempt from the execution. *Id.* § 52–278e(b). In the event that a defendant chooses to exercise his right to a postdeprivation hearing, the court must hold such a hearing within seven business days after the defendant requests one. *Id.* § 52–278e(c). On appeal, the Shaumyans argue that section 52–278e(a)(1) is unconstitutional because it fails to provide for a predeprivation hearing and because it fails to provide for the posting of a bond. Before addressing these arguments, we first summarize the Supreme Court cases addressing the constitutionality of prejudgment attachment statutes.

In *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Supreme Court held that a Wisconsin statute permitting the prejudgment garnishment of a debtor's wages without prior notice or a hearing violated the Due Process Clause of the Fourteenth Amendment. The Court took care to note that the statute allowed a court clerk rather than a judge to garnish a defendant's wages at the request of the creditor's attorney, *id.* at 338, 89 S.Ct. at 1821, and noted further that wages were "a specialized type of property presenting distinct problems in our economic system," *id.* at 340, 89 S.Ct. at 1822.

Three years after *Sniadach* was decided, the Court in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), invalidated Florida and Pennsylvania replevin statutes on due process grounds. The Florida statute allowed a creditor to seize the personal property of a debtor without a showing of probable cause, without judicial supervision, and without prior notice or a hearing. *Id.* at 73–74, 93, 92 S.Ct. at 1991, 2000. The Pennsylvania statute not only lacked the same procedural safeguards as the Florida statute but also failed to provide for a postdeprivation hear-

ing. *Id.* at 75, 92 S.Ct. at 1991. Both statutes required the plaintiff-creditor to post a security bond equal to double the amount of the seized property. Notwithstanding the security bond provisions in the statutes, the Court found the procedural safeguards to be inadequate and thus extended the due process protections it established in *Sniadach* to include a debtor's possessory interest in the use and enjoyment of his personal property, *id.* at 84, 92 S.Ct. at 1996.

In *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Court declined to strike down on due process grounds a Louisiana statute that permitted a creditor-lienholder to seek the sequestration of disputed goods in an *ex parte* proceeding. In its decision, the Court noted that the statute: required a creditor to present a fact-specific affidavit to a judge; required a creditor to post a security bond; required the judge to hold a postdeprivation hearing immediately; and allowed the debtor to regain interim possession of the property by filing a substitute bond. *Id.* at 605–07, 94 S.Ct. at 1899–1900.

In the same year that it decided *Mitchell,* the Court affirmed without opinion *Spielman–Fond, Inc. v. Hanson's, Inc.,* 379 F.Supp. 997 (D.Ariz.1973) (per curiam), *aff'd mem.,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). In *Spielman–Fond,* a three-judge court declined to strike down Arizona's mechanic's lien statute on due process grounds even though the statute did not have the procedural safeguards that were present in *Mitchell.* The district court upheld the statute because it did not consider the encumbrance placed on the real property by the mechanic's lien to be a "taking of a significant property interest." 379 F.Supp. at 999.

In *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court struck down Georgia's prejudgment garnishment statute, which allowed a creditor to obtain an *ex parte* writ garnishing a debtor's bank account after submitting an affidavit containing only conclusory allegations to a court clerk. Like the statutes in *Fuentes,* the Georgia statute also required a creditor to post a bond equal to double the amount of the debt due, and it allowed a debtor to regain possession of the property by filing a substitute bond. The Court held that, like the statutes in *Fuentes,* the Georgia statute violated the Due Process Clause because it lacked any requirement for an affidavit of probable cause, or judicial oversight and included no provision for a hearing.

Finally, in *Doehr, supra,* the Court struck down the statute implicated here as applied to defendants in intentional tort cases. The *Doehr* Court applied the three-prong test first articulated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), to determine whether Connecticut's prejudgment attachment statute violated the Due Process Clause. First, the court must consider the private interests that will be affected by the prejudgment measure. Second, the court must examine the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards. And third, the court must consider the interest of the party seeking the prejudgment remedy. *Doehr,* —— U.S. at ——, 111 S.Ct. at 2112. With respect to the first prong, the *Doehr* Court ruled that an attachment affects a significant interest in real property even though the attachment of that interest did not amount to a complete, permanent deprivation of the property. *Id.* at ——, 111 S.Ct. at 2113. With respect to the second prong, the *Doehr* Court struck down the application of section 52–278e(a)(1) to tortfeasors because it found the risk of an erroneous deprivation to be substantial. *Id.* at ——, 111 S.Ct. at 2114. The low standard of proof required in the affidavit of probable cause combined with the inability of a court to predict with precision the outcome of an intentional tort case with all of its complex variables outweighed the procedural safeguards provided by the postdeprivation hearing. *Id.* In applying the third prong of its test, the *Doehr* Court found that the plaintiff had no existing interest in the defendant's real property

when he sought the attachment. His only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his tort action. *Id.* at ——, 111 S.Ct. at 2115.

Five members of the *Doehr* Court declined to address the issue of whether the failure of section 52–278e(a)(1) to require that a plaintiff post a security bond violated the Due Process Clause. A plurality of four Justices, however, reached this issue and stated that due process required a plaintiff to post a security bond to obtain a prejudgment attachment. The plurality reasoned that a bond was especially necessary in tort cases because it provided an extra measure of protection against the danger of wrongful attachment in such unpredictable cases. *Id.* at ——, 111 S.Ct. at 2117. Having reviewed the Supreme Court's decisions discussing due process and prejudgment attachments, we now proceed to address the substance of the Shaumyans' arguments.

## II.

### A.

▮ The Shaumyans first argue that section 52–278e(a)(1) is unconstitutional on its face because it fails to provide for a predeprivation hearing, as the *Doehr* Court required in intentional tort cases. In determining whether a statute violates the Due Process Clause, we begin with the "truism that '[d]ue process unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Doehr*, at ——, 111 S.Ct. at 2112 (quoting *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902). We therefore decline to accept the Shaumyans' invitation to determine whether section 52–278e(a)(1) is *prima facie* unconstitutional. Rather, as in *Doehr*, we will determine whether the statute is unconstitutional as applied to the Shaumyans. *See Doehr*, —— U.S. at ——, 111 S.Ct. at 2109 ("We hold that, *as applied to this case*, [section 52–278e(a)(1)] does not [satisfy the Due Process Clause].") (emphasis added).

### (1)

In considering the private interests that will be affected by section 52–278e(a)(1), we find that the same property interests that were threatened by the application of section 52–278e(a)(1) to intentional tortfeasors in *Doehr* are present here. Like the property owner in *Doehr*, an attachment of the Shaumyans' home would cloud its title, impair their ability to sell or otherwise alienate their property, taint their credit rating, reduce their chances of obtaining a home equity loan or an additional mortgage, and possibly cause any existing mortgage to be cast into default. *See id.* at ——, 111 S.Ct. at 2113. Thus, applying the first prong set forth in *Doehr* supports the Shaumyans' position.

### (2)

In applying the second prong of the *Doehr* test, we do not find that the application of section 52–278e(a)(1) to the Shaumyans would create a substantial risk of erroneous deprivation. *See id.* at ——, 111 S.Ct. at 2113. In determining that the submission of an affidavit of probable cause to a judge did not satisfy the Due Process Clause, the *Doehr* Court noted that this procedure did not protect the defendant against the uncertainties that are associated with intentional tort cases: "Unlike determining *the existence of a debt or delinquent payments*, the issue does not concern 'ordinarily uncomplicated matters that lend themselves to documentary proof.'" *Id.* at ——, 111 S.Ct. at 2114 (emphasis added) (quoting *Mitchell*, 416 U.S. at 609, 94 S.Ct. at 1901). Later in the opinion, the Court emphasized that "disputes between debtors and creditors more readily lend themselves to accurate *ex parte* assessments of the merits." *Doehr*, —— U.S. at ——, 111 S.Ct. at 2115; *see also Union Trust Co. v. Heggelund*, 219 Conn. 620, 594 A.2d 464, 466 n. 3 (1991).

The facts present in the Shaumyans' case fall into the category of cases that the *Doehr* Court sought to distinguish from intentional tort cases. Sidetex installed storm windows in the Shaumyans' home. The Shaumyans refused to pay an out-

standing sum certain due under their contract with Sidetex. Sidetex sued the Shaumyans for that sum certain and subsequently received a judgment for six hundred dollars less than the amount of the initial prejudgment attachment. The facts of the underlying claim were easily documented, and, in the absence of a substantial risk of erroneous deprivation, we find that the procedural safeguards of section 52–278e(a)(1) are similar to those in the statute that was upheld in *Mitchell* and therefore satisfy the second prong of the *Doehr* test.

### (3)

The third prong of the *Doehr* test examines the interests of the plaintiff. In *Doehr*, the Court found that the plaintiff "had no existing interest in [the tortfeasor's] real estate when he sought the attachment. His only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action." *Doehr*, —— U.S. at ——, 111 S.Ct. at 2115. Unlike the plaintiff in *Doehr*, Sidetex had a substantial pre-existing interest in the Shaumyans' real property. Sidetex furnished labor and materials for the improvement of the Shaumyans' home. Since neither Sidetex's labor nor its materials could

be reclaimed once they became part of the Shaumyans' home, the prejudgment attachment statute provided Sidetex with a remedy to protect its interest in the Shaumyans' property. *Cf. id.* at ——, 111 S.Ct. at 2122 (Rehnquist, C.J., concurring) (discussing importance of mechanic's lien statutes). Therefore, even though Sidetex failed to file and perfect a mechanic's lien, Sidetex's unperfected lien nonetheless constituted an interest in the Shaumyans' real property.

■ In their briefs and during oral argument, both parties admitted that Sidetex could have obtained a mechanic's lien against the Shaumyans' house under Connecticut's mechanic's lien statute. We have examined that statute and the Connecticut case law interpreting it and agree with both parties that it could have been invoked in this case.[2] Moreover, the Arizona mechanic's lien statute that was challenged in *Spielman–Fond, supra*, was very similar to the Connecticut mechanic's lien statute. Indeed, the *Doehr* Court suggested that *Spielman–Fond* could have been affirmed on the ground that the Arizona statute protected a creditor's pre-existing interest in property that is the subject of a mechanic's lien. *See Doehr*, —— U.S. at —— n. 4, 111 S.Ct. at 2113 n. 4. Thus, because the procedural safeguards of section 52–278e(a)(1) satisfy the second

---

2. Conn.Gen.Stat. § 49–33 (1991) applies to:

> any person [who] has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or *in the improvement of any lot or in the site development or subdivision of any plot of land* . . . .

(emphasis added). Subsequent to oral argument, the Shaumyans submitted a letter to this Court in which they argued that Connecticut's mechanic's lien statute did not in fact apply to the facts of their case. They contended that section 49–33(a) "applies only to 'materials furnished or services rendered in the construction, raising, removal or repairs of any building,'" and that "[r]enovation, remodeling, alteration or improvement is not included within the statute, which is strictly construed." We have examined the cases cited by the Shaumyans in support of their new argument and find them to be unpersuasive. The statute was amended by the Connecticut legislature in 1974 to include the language underscored above. The cases cited all interpret the statute as it existed *prior* to

the addition of the 1974 language, and the Shaumyans conspicuously omit the added language from their quotation of the statute in their letter to this Court. *See, e.g., Camputaro v. Stuart Hardwood Corp.*, 180 Conn. 545, 429 A.2d 796 (1980); *see also Stone v. Rosenfield*, 141 Conn. 188, 104 A.2d 545 (1954); *New Haven Orphan Asylum v. James A. Haggerty Co.*, 108 Conn. 232, 142 A. 847 (1928). Although, to date, no Connecticut court has authoritatively interpreted the new statutory language, we are satisfied that the work performed by Sidetex constituted an "improvement" to the Shaumyans' property and thus would have allowed Sidetex to obtain a mechanic's lien against the Shaumyans' home. *Cf. Nickel Mine Brook Assocs. v. Joseph E. Sakal, P.C.*, 217 Conn. 361, 585 A.2d 1210, 1212 (1991) (where the court refused to allow an attorney who assisted his client in obtaining a zoning change to file a mechanic's lien against his client's rezoned property but noted that the statute's provisions "should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials.").

and third prongs of the *Doehr* test as it is applied to the Shaumyans, we hold that it does not violate the Due Process Clause of the Fourteenth Amendment.

### B.

The Shaumyans also argue that section 52–278e(a)(1) is unconstitutional because it does not require a plaintiff to post a security bond. A similar argument was made by the defendants in *Pinsky v. Duncan*, 898 F.2d 852 (2d Cir.1990), *aff'd sub nom.*, *Connecticut v. Doehr*, — U.S. —, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), and was rejected by two members of the panel. *See Pinsky*, 898 F.2d at 858–61 (Mahoney, J., concurring); *id.* at 864 (Newman, J., dissenting). Because only a plurality of four Justices in *Doehr* addressed this issue, principles of *stare decisis* would normally preclude us from considering this issue anew. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir.) (" 'a panel of this court will not overturn a recent decision of another panel, rendered after full consideration of the very point at issue' ") (quoting *Kremer v. Chemical Constr. Corp.*, 623 F.2d 786, 788 (2d Cir. 1980), *aff'd*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)), *cert. denied*, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). However, because the Connecticut Supreme Court has revisited its state's vexatious litigation statute since we decided *Pinsky*, we will reexamine this issue in light of this new decision, although our analysis ultimately leads us to the same conclusion.

In *Pinsky*, the concurring and dissenting judges agreed that the failure of section 52–278e(a)(1) to require the plaintiff to post a security bond was not constitutionally defective because a defendant whose property had been wrongfully attached could bring a counterclaim for damages under Connecticut's vexatious litigation statute, Conn.Gen.Stat. § 52–568(a) (1991), instead of having to initiate a new action. *See Pinsky*, 898 F.2d at 860–61 (Mahoney, J., concurring); *id.* at 862 (Newman, J., dissenting). The concurring and dissenting opinions did not discuss the standard for

determining liability under the vexatious litigation statute, however. The Connecticut vexatious litigation statute provides:

.Any person who commences and prosecutes any civil action or complaint against another ... (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages.

Conn.Gen.Stat. § 52–568(a). After *Pinsky* was decided, the Connecticut Supreme Court decided *DeLaurentis v. City of New Haven*, 220 Conn. 225, 597 A.2d 807 (1991). The *DeLaurentis* court defined probable cause to mean a "good faith belief in the facts alleged and the validity of the claim asserted." *Id.* 597 A.2d at 823. The court defined malice to mean " 'a purpose other than that of securing the proper adjudication of the claim....' " *Id.* at 822 n. 16 (quoting *Restatement (Second) of Torts* § 676 (1977)). Thus, although the standard of liability articulated by the *DeLaurentis* court apparently would limit the number of debtors who could bring vexatious litigation suits against creditors who attached their real property pursuant to section 52–278e(a)(1), plaintiffs like the Shaumyans may still utilize Connecticut's vexatious litigation statute to protect their interests in the absence of a security bond.

In holding that a security bond need not be posted in connection with a prejudgment attachment, we rely on the language of the *Doehr* plurality, the conclusion reached by the concurring and dissenting opinions in *Pinsky* and the absence of a bond requirement in the mechanic's lien statutes of Connecticut and other states.

In *Doehr*, the plurality found the statute to be defective for the additional reason that it failed to require the posting of a security bond in intentional tort cases. The plurality noted that a security bond requirement would not alleviate the need for a predeprivation hearing. Like the predeprivation hearing, the bond requirement insured against the "unacceptably high" risk that the tortfeasor's "property rights may be wrongfully deprived ... even with such safeguards as a hearing or exigency re-

quirement." *Doehr,* —— U.S. at ——, 111 S.Ct. at 2117; *see also North Ga. Finishing,* 419 U.S. 601, 95 S.Ct. 719 (statute containing bond provision struck down); *Fuentes,* 407 U.S. 67, 92 S.Ct. 1983 (same). Thus, like the predeprivation hearing, the *Doehr* plurality justified its requirement for the posting of a security bond on the substantial risk of wrongful deprivation. As we have discussed above, *ante* at pp. 126–27, no such risk exists in this case, and therefore, due process does not require Sidetex to post a security bond.

We also find support in Chief Justice Rehnquist's observation in *Doehr* that due process would not mandate that a mechanic's lien statute like the one in *Spielman–Fond* require the posting of a security bond. *See Doehr,* —— U.S. at ——, 111 S.Ct. at 2122 (Rehnquist, C.J., concurring) ("To require any sort of a contested court hearing or bond before the notice of [a mechanic's] lien takes effect would largely defeat the purpose of these statutes."). Because Sidetex used section 52–278e(a)(1) to achieve the same results that it could have achieved under Connecticut's mechanic's lien statute, *see ante* at pp. 127–28 n. 2, we see no reason why due process would require it to post a bond in one instance but not in the other. Therefore, we hold that the failure of section 52–278e(a)(1) to require Sidetex to post a security bond does not violate the Due Process Clause of the Fourteenth Amendment.

### CONCLUSION

In upholding the constitutionality of section 52–278e(a)(1) against the challenges brought by the Shaumyans, Judge Nevas wrote in his second opinion that his decision was "limited exclusively to the facts of this case and its application to a breach of contract action involving an attachment of real property in which the attaching plaintiff seeks payment for material installed and labor performed on that piece of real property." *Shaumyan II,* 795 F.Supp. at 534. We agree, and affirm the judgment of the district court in all respects.