683 A.2d 839

SHERWOOD COURT, PLAINTIFF–APPELLANT, v. BOROUGH OF SOUTH RIVER AND SOUTH RIVER ELECTRIC CO., DEFENDANTS–RESPONDENTS.

GRANDE ASSOCIATES, PLAINTIFF–APPELLANT, v. BOROUGH OF SOUTH RIVER AND SOUTH RIVER ELECTRIC CO., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division.

Argued October 8, 1996—Decided October 28, 1996.

Before Judges DREIER and NEWMAN.

*John A. Stone* argued the cause for appellants Sherwood Court and Grande Associate (*Cohn & Cohn,* attorneys; *Mr. Stone,* of counsel and on the brief).

*Thomas C. Roselli* argued the cause for respondents Borough of South River and South River Electric Co. (*Roselli & Roselli,* attorneys; *Mr. Roselli,* of counsel and on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Plaintiffs Grande Associates and Sherwood Court (hereinafter collectively referred to as plaintiffs) own apartment complexes in South River. Tenants of the complexes receive electricity from defendant South River Electric (SRE), a utility company owned by the municipality, the defendant Borough of South River. Prior to receiving electric service, tenants are required to complete a request form and place a deposit with SRE. Plaintiffs have either consented to the electric service by general authority given to

SRE or by specific authorization for a particular unit. Electric service is then connected to the unit involved. There is no express contractual relationship between plaintiff and SRE. An unspecified number of tenants have accumulated unpaid electric bills. SRE has placed liens on plaintiffs' properties for electric bills left unpaid by tenants. A tax sale of the lien certificates was scheduled to recoup the amount of the unpaid bills.

Plaintiffs instituted actions seeking temporary restraints against the sale of tax lien certificates and a summary decision. Plaintiffs moved for summary judgment, challenging the enforceability of *N.J.S.A.* 40:62–14 which authorizes municipal liens "against the property and premises where such light, heat or power is furnished." Even though the owner of the property or premises is not in a contractual relationship with the municipality or the municipal-owned electrical facility, the municipality has placed the lien against the owner's property or premises. In upholding the statutory lien authority, the motion judge determined that water lien-decisions in *Vreeland v. Jersey City,* 37 *N.J.Eq.* 574 (E & A 1883) and *Ford Motor Company v. Kearny,* 91 *N.J.L.* 671, 103 *A.* 254 (E & A 1918) were sound precedents for permitting municipal liens against the owner of the property where water supplied by the municipality was furnished to the tenant. This principle was extended to the furnishing of electrical power to the tenants and imposing a lien against the property owner. Plaintiffs appeal. We affirm in a consolidated opinion.

On appeal, plaintiffs contend that SRE has no right to impose liens for plaintiffs' tenants unpaid electric bills. In support of this proposition, plaintiffs argue (1) that the court's interpretation of *N.J.S.A.* 40:62–14 is unconstitutionally overbroad; (2) that the enforcement of this statute is in derogation of the common law; (3) that liens entered against plaintiffs' property violate plaintiffs' due process rights; and (4) that *N.J.S.A.* 40:62–14 should have been read in *pari materia* with *N.J.S.A.* 46:8–21.1 (the security deposit statute) which limits the security that a landlord can

legally require a tenant to deposit. We address each of plaintiffs' arguments in the order they were raised.

## I.

■ Plaintiffs contend that *N.J.S.A.* 40:62.14 was improperly interpreted to permit SRE to place a lien on plaintiffs' properties when plaintiffs were non-contracting parties, for the outstanding electric charges of their tenants, who did have a contractual relationship with the power company. *N.J.S.A.* 40:62–14 provides as follows:

> The rates, rents, or charges shall remain, until paid, municipal liens against the property and premises where such light, heat or power is furnished, and shall draw interest at the rate of seven percent per annum from and after the time when they shall become due, and shall, in addition to all other remedies, be collectible in the same manner as arrearages of taxes.

The plain language of the statute expressly authorizes a lien against the property and premises where power is furnished when the charges for that power have remained unpaid. The interest rate is spelled out for the amount after it becomes due and the remedies include the collection of these arrearages in the same manner as taxes. We see no reason to go beyond the statutory language when the meaning of the statute has been so clearly stated by the legislature.

The Court of Errors and Appeals addressed a situation similar to this one in *Ford Motor Co. v. Town of Kearny, supra.* There the statute in question read as follows:

> 9. *And be it enacted,* That the rents for the use of the water which said water commissioners may supply as aforesaid, shall draw interest from the time they become due, and shall be and remain, until paid, a lien upon the premises to which the same may be conducted and supplied. . . .
>
> [Act of March 5, 1884 (P.L. p. 49).]

In *Ford,* plaintiff leased vacant land to which the tenant secured water supply. The court found that the landlord had no reason to know of the use of water on the property because there was no foreseeable need for water on a vacant lot. *Ford, supra,* 91 *N.J.L.* at 676, 103 *A.* 254. For this reason, there could be no implied or

expressed contract with the owner of the lot sufficient to justify liens against the property for unpaid water rates. *Id.*

In so holding, the court, in *dictum,* addressed the validity of this statutory scheme. The court stated that a lien against property for the unpaid utility charges of a tenant would be valid so long as there is an implied or expressed contract with the landlord. *Ford, supra,* 91 *N.J.L.* at 673, 103 *A.* 254. The court went on to say:

> The lien given by the statute, therefore, in the case of water sold by measure must derive its vitality from the sale itself, as such; that is, from contract. Whatever the purchaser of the water had authority, express or implied, to bind by his contract, to that the lien will attach. Further than that, it cannot go.
>
> [*Ibid.*]

While the *Ford* court held that a contract did not exist, it clearly contemplated the validity of a lien under this statute if the contract, expressed or implied, had existed.

Other courts have upheld the validity of statutes or ordinances providing for liens which secure the payment of charges for utilities introduced to a property, irrespective of who is the user. *E.g., Cook v. City of Enterprise,* 233 *Kan.* 1039, 666 *P.*2d 1197 (1983) (The court found that a Kansas statute, interpreted to authorize a lien on landlord's property for unpaid electrical bills of tenant, was valid.); *Laskaris v. City of Wisconsin Dells, Inc.,* 131 *Wis.*2d 525, 389 *N.W.*2d 67 (1986) (A statute authorizing "special charges (liens)" was interpreted to allow liens on landlord's property for the unpaid electrical bills of tenant.); *see generally, Annotation, LIABILITY OF PREMISES OR THEIR OWNER OR OCCUPANT FOR ELECTRICITY, GAS, OR WATER CHARGES, IRRESPECTIVE OF WHO IS THE USER,* 19 *A.L.R.*3d 1227 (1968). The common thread throughout these decisions is the implied consent by the landlord to the introduction of electricity into its buildings thereby creating an implied contract between the landlord and the municipal utility company. *Dunbar v. New York,* 251 *U.S.* 516, 40 *S.Ct.* 250, 64 *L.Ed.* 384 (1920); *City of Maryville v. Cushman,* 363 *Mo.* 87, 249 *S.W.*2d 347 (1952) (An owner of property can be charged with knowledge of the applicable statute and, in so doing, created an implied contract

for services by connecting the premises to the water supply.); *City of East Grand Forks v. Luck,* 97 *Minn.* 373, 107 *N.W.* 393 (1906) (The court determined that implied contract for services existed with regard to electrical charges.).

Contrary to plaintiffs' assertion, the enforcement of the lien against their properties under *N.J.S.A.* 40:62–14 does not lead to an absurd result. Plaintiffs are benefitted by the fact that power is supplied to their buildings. Without power, there would be no tenants. Additionally, since SRE is a municipal entity, taxpayers of the municipality would ultimately be responsible for any unpaid debts. If any unfairness exists, it could fall on the taxpayers in the absence of *N.J.S.A.* 40:62–14 authorizing liens against the property to which electricity has been furnished.

Furthermore, plaintiffs have not persuaded us that the legislative intent underpinning *N.J.S.A.* 40:62–14 is anything other than what is reflected in its plain language. The fact that plaintiffs claim that the statute is unfair to them, as landlords, or that this particular situation is not specifically included in the language of the statute is not sufficient justification to abandon the plain language of the statute in favor of a "common sense" reading. Were we to adopt a common sense approach to this statute, as plaintiffs would have us do, the lower court's interpretation of *N.J.S.A.* 40:62–14 would still be acceptable. Other courts, including New Jersey, have contemplated similar statutes and factual situations and held them to be reasonable. We can discern no reason to deviate from the plain language of the statute authorizing the municipal lien against plaintiffs' property or premises.

## II.

■ Plaintiffs contend that statutes creating liens, being in derogation of the common law, must be strictly construed, citing *Key Agency v. Continental Cas. Co.,* 55 *N.J.Super.* 58, 63, 149 *A.*2d 797 (Ch.Div.), *aff'd,* 31 *N.J.* 98, 155 *A.*2d 547 (1959). Plaintiffs also refer to the common law doctrine of privity in support of their assertion that lien statutes should be construed narrowly.

Because South River and SRE are not in privity with plaintiffs, the statute should be construed so as not to include a lien against a party who did not incur the debt.

We disagree. The interpretation given to *N.J.S.A.* 40:62–14 provides full recognition of the common law doctrine of privity. As pointed out, courts have held that liens can only be enforced when there is statutory authority for the lien and an expressed or implied contract to which the landlord is a party. *See Dunbar, supra,* 251 *U.S.* at 517–518, 40 *S.Ct.* at 251, 64 *L.Ed.* at 385; *Ford, supra,* 91 *N.J.L.* at 672, 103 *A.* 254 ("Statutory liens upon the landlord's estate and leased real property for water rents or for water charges for water supplied thereon to the tenant must depend for their validity either upon the taxing power or upon contract."). Indeed, privity is not being ignored under these circumstances, but instead, is made a requirement for the enforcement of this lien. Here, as in *Dunbar,* plaintiffs had knowledge of the statute and authorized electrical connections to the tenants of their buildings. That is sufficient to create an implied contract and validate the lien. The statute provides sufficient authorization to enforce the lien. Thus, contrary to plaintiffs' contention, the statute is not being enforced in derogation of common law but in accordance with it.

### III.

■ Plaintiffs assert that enforcing the lien against its properties for the unpaid debts of its tenants amounts to a deprivation of property and violates its due process rights. According to plaintiffs, *N.J.S.A.* 40:62–14 is overbroad because it punishes plaintiffs for the debts of their tenants over which they had no notice, control or contractual relationship.

Statutory schemes such as the one presented in *N.J.S.A.* 40:62–14, have withstood due process challenges by landlords. In *Dunbar,* the City of New York brought a lien against plaintiff's property to secure the payment of unpaid water charges. *Dunbar, supra,* 251 *U.S.* at 516–517, 40 *S.Ct.* at 250, 64 *L.Ed.* at 385.

Dunbar argued that her due process rights had been violated because she did not explicitly consent to the installation of water meters in the building she owned. *Id.* at 518, 40 *S.Ct.* at 2.51, 64 *L.Ed.* at 385. The statute authorizing the lien in *Dunbar* provided that "the charges for water supplied to the tenant for use in the building should be a lien upon the building." *Dunbar v. City of New York,* 177 *A.D.* 647, 164 *N.Y.S.* 519, 521 (N.Y.App.Div.1917), *aff'd,* 223 *N.Y.* 597, 119 *N.E.* 1039 (1918), *aff'd,* 251 *U.S.* 516, 40 *S.Ct.* 250, 64 *L.Ed.* 384 (1920). The Court found that consent could be implied considering plaintiff's knowledge of the law and the obvious contemplation that water was to be used during the lease. *Dunbar, supra,* 251 *U.S.* at 518, 40 *S.Ct.* at 251, 64 *L.Ed.* at 385. Indeed, the property would not be fit for habitation without the introduction of water into the premises. *Ibid.*

The same holds true here. Plaintiffs impliedly consent to the tenant's use of electricity in its apartments because they would not be habitable without that service. According to *Dunbar,* "when such assent or arrangement is made, it must be deemed to be made with a view to the existing law." *Ibid.* Accordingly, plaintiffs impliedly consented to their tenant's use of power and did so fully aware of *N.J.S.A.* 40:62–14. There is no due process violation.

As an additional due process concern, plaintiffs contend that they have not been given notice of the unpaid electric charges. Failing such notice, plaintiffs argue that the statute is constitutionally defective.

Notice is a procedural due process concept. A recent United States Supreme Court case has found that even temporary or impartial impairments of property rights, such as liens, implicate due process concerns. *Connecticut v. Doehr,* 501 *U.S.* 1, 111 *S.Ct.* 2105, 115 *L.Ed.*2d 1 (1991). In *Doehr,* the Court addressed the validity of a lien on the residence of a defendant to an intentional tort action. After finding that due process protection was required, the Court applied a test, formulated in *Mathews v. Eldridge,* 424 *U.S.* 319, 96 *S.Ct.* 893, 47 *L.Ed.*2d 18 (1976), to

determine what process was due to protect defendant's constitutional rights. The *Mathews* test instructs the Court to conduct a three-pronged inquiry, taking into consideration the private interest affected; the risk of error in depriving that interest through the applicable procedures including the probable value of additional safeguards; and, finally, the government interest involved including the additional economic and administrative burdens that further procedural safeguards would incur. *Doehr, supra,* 501 *U.S.* at 10, 111 *S.Ct.* at 2112, 115 *L.Ed.*2d at 13.

Factually, in *Doehr,* plaintiff, the alleged victim of an assault, placed a lien on the defendant's residence. The Connecticut statute authorizing the lien, provided no procedure for prior notice or a hearing. A lien could be imposed to protect plaintiff's potential tort recovery based solely on plaintiff's affidavit showing probable cause. With respect to the first prong of the *Mathews* test, the Court found that the property interests threatened were great even in the case of a temporary lien. *Id.* at 11–12, 111 *S.Ct.* at 2113, 115 *L.Ed.*2d at 14. With respect to the second prong, the Court found that there was a substantial risk of error because of the speculative nature of damages in an intentional tort case. The safeguards in place did not reduce the potential of error. *Id.* at 12–13, 111 *S.Ct.* at 2113, 115 *L.Ed.*2d at 14–15. With respect to the third prong, the Court found that the interests in favor of attachment were low. Plaintiff had no interest in defendant's property other than to protect a potential tort judgment, and the government had little if any interest at all. *Id.* at 16, 111 *S.Ct.* at 2115, 115 *L.Ed.*2d at 16–17. In light of these factors, the Court declared the Connecticut statute invalid without a pre-attachment hearing or a showing of exigency.

The *Doehr* holding, however, does not invalidate every statute permitting attachment without notice or a hearing. *See, e.g., Shaumyan v. O'Neill,* 987 *F.*2d 122 (2d Cir.1993) (The court validated a contractor's ex parte attachment of plaintiff's home for unpaid bills.); *Cobb v. Saturn Land Co. Inc.,* 966 *F.*2d 1334, 1337 (10th Cir.1992) (The court found that oil and gas liens were valid,

stating: "[I]n light of the heightened interest served and diminished burden imposed ... we conclude that the admittedly incomplete procedural protections afforded the affected property owner are nevertheless constitutionally adequate...."). Plaintiffs' situation is sufficiently distinguishable from *Doehr* to overcome a due process challenge.

We agree, under the first prong of the *Mathews* test, that plaintiffs have a significant property interest at stake. In contrast to *Doehr* under the third prong of the *Mathews* test, the government and municipal utility company also have significant interests. The Borough of South River must be compensated for unpaid utilities charges, preventing taxpayers from bearing the burden. Furthermore, while in *Doehr* plaintiff had no interest in defendant's property, here we have landlords who are aware of *N.J.S.A.* 40:62–14 and, therefore, parties to an implied contract with SRE. Additionally, plaintiffs' properties are the beneficiaries of the service that the municipality provides. *See Shaumyan, supra,* 987 *F.*2d at 127. (The court found that defendant had a pre-existing interest in plaintiffs' property because plaintiff had furnished labor creating and had an unperfected mechanics lien.).

With respect to the second prong of the *Mathews* test, unlike *Doehr,* there is minimal opportunity for error here. Plaintiffs' tenant's bills for electrical service are unpaid. The lien represents the amount of the unpaid bills. The Court, in *Doehr,* in fact, notes the difference between the uncertainty involved in an intentional tort case as opposed to "the existence of a debt or delinquent payments [because] the issue does not concern 'ordinary uncomplicated matters that lend themselves to documentary proof.'" *Doehr, supra,* 501 *U.S.* at 14, 111 *S.Ct.* at 2114, 115 *L.Ed.*2d at 15. (quoting *Mitchell v. W.T. Grant Co.,* 416 *U.S.* 600, 609, 94 *S.Ct.* 1895, 1901, 40 *L.Ed.*2d 406, 415 (1974)). The amount of money due is a sum certain. No additional hearing or notice prior to the imposition of the lien will provide additional protection for plaintiffs. Accordingly, applying the *Mathews* test, we are satisfied that *N.J.S.A.* 40:62–14 is not violative of plaintiffs' due process

rights. Due process considerations do not require notice prior to the attachment of plaintiffs' properties to ensure the payment of delinquent electrical utility bills. Once the property is attached, *N.J.S.A.* 40:62–14 requires that unpaid electric fees be collected "in the same manner as arrearages of taxes." So long as the municipality conforms to those requirements, the imposition of a lien does not offend plaintiffs' due process rights.

Moreover, the notice requirement found in tax statutes satisfies any due process concerns that a taking of the property could occur without notice. It is obvious that tenants need electricity and the government must be paid for providing it. Plaintiffs, as landlords, are well aware of this situation. Indeed, plaintiffs are in the best position to address the concern of unpaid electric charges in their own leasing arrangements with their tenants. They could easily require their tenants to provide copies of the paid electric bills with the submission of their monthly rental payments. Moreover, SRE, like any utility, does not allow the unpaid electric bill to go beyond a 60 to 75 day time period. A delinquent notice is provided to the tenant if the tax bill has not been paid within fifty days. That notice is sent at least ten days prior to the next month's tax bill or fifty days after the bill was initially submitted to the tenant. If that bill is not paid, a five day shut-off notice is sent. Except for circumstances where a tenant might have electric heat, which is beyond what the record presents in this case, the electric power can be shut off. The concern that unpaid electric charges might continue for an indefinite period of time is ill-founded. Under these circumstances, we are satisfied that the notice requirements for the lien which parallel the tax statute's requirements are sufficient to withstand a due process challenge.

## IV.

Lastly, plaintiffs contend that because of the operation of *N.J.S.A.* 46:8–21.1 (the security deposit statute), *N.J.S.A.* 40:62–14 cannot be interpreted in the way it has been. Plaintiffs claim that landlords must limit the amount of a security deposit which they

can require to one and one half of the monthly rental charge. *N.J.S.A.* 46:8–21.2. According to the security deposit statute, these deposits must be returned to the tenants within thirty days of their vacating the premises. *N.J.S.A.* 46:8–21.1. Plaintiffs claim that these two statutes must be read together. In so doing, plaintiffs contend that the lower court's interpretation of *N.J.S.A.* 40:62–1 has created an untenable position for landlords.

We do not see where the two statutes need reconciliation by way of interpretation. Rather, we view the situation as amenable to a practical solution. Plaintiffs are business entities that were aware of the statutes and impliedly consented to their application when they permitted the introduction of electricity to their buildings. Plaintiffs are in the best position to address the problems of unpaid electric bills by their own tenants. As already alluded to, plaintiffs may look to the one and one half month's security for payment of any unpaid utility bills. While we recognize that the security deposit might be needed to cover rent arrearages or even damage to the premises, some of the security might also be available for unpaid electric charges. Moreover, as already pointed out, plaintiffs could easily require copies of paid monthly utility bills be presented by the tenant. The risk of termination of electrical service to an individual unit further assures that the unpaid charges are unlikely to exceed a two month arrearage. The security deposit posted by the tenant with plaintiffs should therefore be more than sufficient to cover the unpaid charges. The operation of the statutory scheme contemplates an implied contract with the owners of the properties. Plaintiffs, as owners, are in the best position to avoid any harsh results that could possibly be visited upon them.

The order granting defendants' summary judgment motion is affirmed.